James WEST, Appellant,

v.

UNITED STATES of America,
Appellee.

Andrew REMES, Appellant,

v.

UNITED STATES of America,
Appellee.

Hyman LUMER, Appellant,

v.

UNITED STATES of America,
Appellee.

Sam REED, Appellant,

v.

UNITED STATES of America,
Appellee.

Eric REINTHALER, Appellant,

v.

UNITED STATES of America,
Appellee.

Marie Reed HAUG, Appellant,

v.

UNITED STATES of America,
Appellee.

Fred HAUG, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 13672–13678.

United States Court of Appeals
Sixth Circuit.

Feb. 15, 1960.

Victor Rabinowitz, New York City, Jack G. Day, Cleveland, Ohio, Frank J. Donner, New York City (Ann Ginger, Berkeley, Cal., on the brief for appellants James West, Andrew Remes, Hyman Lumer and Sam Reed; Donner, Kinoy & Perlin, New York City, on the brief for appellant Eric Reinthaler; David Scribner, New York City, on the brief for appellants Marie Reed Haug and Fred Haug), for appellants.

George B. Searls and Bruno A. Ristau, Dept. of Justice, Washington, D. C. (J. Walter Yeagley, Ass't Atty. Gen., Jerome L. Avedon and Doris H. Spangenburg, Washington, D. C., Russell Ake, U. S. Atty., Cleveland, Ohio, on the brief), for appellee.

Before McALLISTER Chief Judge, and MARTIN and SHACKELFORD MILLER, Jr., Circuit Judges.

## PER CURIAM.

Appellants were indicted for conspiracy to unlawfully make, use, and file, and cause to be made, used, and filed, false affidavits of "Non-Communist Union Officer" with the National Labor Relations Board, knowing that the statements made therein that affiants were not members of, or affiliated with, the Communist party, were false, in violation of Title 18 U.S.C.A. § 1001, and Title 18 U.S.C.A. § 371. On a trial before a jury, each appellant was found guilty and sentenced to a fine of $2,500.00 and imprisonment for eighteen months.

In three separate appeals, there are presented, in the briefs of appellants, under the rules of this court, a Statement of Questions Involved, which aggregate 35 questions. Many of these questions, in one appeal, are the same as those in the other appeals. In brief, appellants' contentions may be summed up as follows: that the evidence as to each appellant's knowledge of, and participation in, the charged conspiracy, was insufficient to sustain a verdict of guilty; that the court committed error in the admission of evidence against appellants; that the comment of the trial judge concerning the Federal Bureau of Investigation reports of a government witness resulted in prejudicial error; that the comments of the district attorney during the trial, and his closing summation constituted reversible error; that the District Court committed errors in its instructions to the jury, (1) on the issue of the credibility of witnesses, (2) on the elements required to establish membership in the Communist party, and (3) in failing to instruct that two witnesses were necessary to prove perjury under Title 18 U.S.C.A. § 1001; that the trial court erred in refusing to order the production of the notes of a government attorney; that appellants did not receive all of the reports of a government witness, which were required to be produced under Title 18 U.S.C.A. § 3500; that the trial court improperly excised statements of government witnesses, which were produced upon the request of appellants; that the court erred in denying a new trial because of newly discovered evidence as to the credibility of a government witness, and on the ground that the government had used perjured evidence and suppressed impeaching evidence; that error was committed by the trial court during the hearing for a new trial because it denied appellants access to every document which related to a certain government witness; and that the statutes under which appellants were indicted violated their rights under the First and Fifth Amendments.

The indictment arose out of statutory changes in the National Labor Relations Act, wrought by Section 9(h) of the Labor Management Relations Act of 1947.

(Title 29 U.S.C.A. § 159(h)), commonly known as the Taft-Hartley Act, in which it was provided that before a union could invoke the procedures of the National Labor Relations Act in a labor dispute within the Board's jurisdiction, each union officer was obliged to file with the Board, an affidavit that he was not a member of, or affiliated with, the Communist party, and that he did not believe in, and was not a member of, and did not support, any organization that believes in, or teaches the overthrow of the United States government by force, or by any illegal or unconstitutional methods— known as "affidavit of Non-Communist Union Officer." It appeared that the Communist party, insofar as concerns the appellants herein, at first adopted a policy of non-compliance with the Non-Communist affidavit provision, above mentioned, and officers of the Party at various official meetings announced the policy that members would not comply therewith, as the Act was designed to isolate the Party from the labor movement. It thereafter appeared that those unions which followed such policy of non-compliance, were confronted by raids upon membership conducted by other unions who, by compliance, were enabled to use the machinery of the National Labor Relations Act, in labor disputes. Accordingly, the policy of the Communist party with regard to the affidavits was changed at a full meeting of the National Committee, which ruled the Party between conventions; and Gus Hall, the Ohio State Chairman of the Party, reported the new policy at a meeting of the State Committee, which was open only to members of the Committee and invited section organizers. In this report, Hall went on to say that it was necessary to get back into the main stream of labor, and prevent the Party from being isolated because of laws passed by the bourgeoisie; that the Party would determine who was to comply with the Taft-Hartley law, and who were not to comply; that there were cases where they had to comply, and that the necessity of staying with the organized labor movement was such that "we had to * * * lie, scheme, cheat and et cetera to stay within those ranks." In this regard, Hall quoted from the writings of Lenin, where it was said:

"There can be no doubt that those gentlemen, the leaders of opportunism, will resort to every trick of bourgeois diplomacy, to the aid of bourgeois government, the priests, the police and the courts, to prevent Communists joining the trade union, to force them out by every means, to make their work in the trade unions as unpleasant as possible, to insult, bait and persecute them. We must be able to withstand all this, to agree to any sacrifice, and even— if need be—to resort to all sorts of stratagems, artifices, illegal methods, to evasions and subterfuges, only so as to get into the trade unions, to remain in them, and to carry on Communist work within them at all costs."

Hall further declared that if they had to go through the "formalities of the law," they would do it, and that "this meant that in some cases, some of our people would have to submit resignations and sign Taft-Hartley affidavits." Later at a conference of members of the Party, he again explained the new policy which would allow members to sign the required affidavits and thereby permit their unions to comply with the law. Subsequently in a meeting with a functionary of the Party, who thereafter became an informant for the government, Hall discussed the problem of a member of the Party who had been elected as an officer of a union, and was, therefore, faced with the question of compliance with the law. He stated that in similar cases, such persons would submit their resignations from the Party, which would keep them on file to protect the person, who could then proceed to comply with the Act; that the person who signed such Non-Communist affidavit should be instructed not to attend public meetings; and that the Party organizers would see that they got "contributions,"

instead of dues, and that they would keep in touch with persons submitting such resignations. A government witness who, at the request of the Federal Bureau of Investigation, joined the Communist party, and who afterward acted as financial secretary for the Dayton, Ohio, section, testified that there was a re-registration of every member of the Party every year; and other evidence disclosed that those who had been authorized to sign the Non-Communist affidavits, would, upon re-registration, be put in a separate group to be known as the Taft-Hartley Group. Such "Taft-Hartley Groups" were also designated as "Unavailables."

All of the appellants were devoted members of the Communist party, and held positions and offices of responsibility. The issue was whether they conspired to violate the Act, in making, using, and filing, and causing to be made, used, and filed false affidavits of "Non-Communist Union Officer," knowing that the statements made therein, that affiants were not members of, or affiliated with the Communist party, were false and in violation of the Taft-Hartley Act and the conspiracy statute.

Appellants Marie Haug and Fred Haug signed Non-Communist affidavits. They were charged as members of the conspiracy with Sam Reed, Hyman Lumer, Andrew Remes, Eric Reinthaler, and James West. The factual issue was whether there was substantial evidence to sustain the charge of conspiracy. The government's case on the factual issue rested upon testimony of witnesses who had joined the Communist party at the request of the Federal Bureau of Investigation, and other witnesses who had been important functionaries of the Party, and who had left the Party, and thereafter became informants for the government. There was substantial evidence to sustain the verdict of the jury that appellants were guilty of conspiracy.

On a motion for judgment notwithstanding verdict, and for a new trial, submitted by appellants Marie Haug and Fred Haug, and apparently adopted by the other appellants, insofar as applicable to them, it is claimed that the evidence failed to establish: the existence of the conspiracy, or that appellants were members of or parties to the conspiracy; that they were members of, or affiliated with the Communist party at the time they signed the affidavits; that they knew and affirmatively acted in pursuance of the alleged conspiracy with the specific intent to achieve its object; that they knew or believed they were members of the Communist party at the time they signed the affidavits; that they signed them with criminal intent, or knowingly used or caused the affidavits to be used for the purpose of fraudulently securing any benefit or service through the National Labor Relations Board; that they caused them to be filed with the Board; and that the affidavits were related to a matter within the jurisdiction of this Board. It is further claimed by appellants that the meetings, statements, and activities concerning which evidence was produced, were of an innocent character and protected by the First Amendment; that the evidence was not of the nature to exclude every other hypothesis save that of guilt; that it was insufficient to justify a conviction because lacking two independent witnesses—or a witness and corroborating circumstances; that the court erred in denying appellants' motion for acquittal; that the verdict was contrary to the evidence, and not sustained by it; that there was error in the admissibility of evidence; that the court erred in its comment as to certain exhibits; that the court improperly excised certain matters from documents in reports of government witnesses; and that the comment and argument of government counsel in summation to the jury was prejudicial.

After a hearing of oral argument on the foregoing motion, and after considering the briefs submitted by the appellants and the government, the District Court, in a comprehensive opinion extending through twelve printed pages of the record, denied the motion.

Thereafter appellants filed a motion for a new trial under Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground of newly discovered evidence, supported by an affidavit that the government witness Gardner committed perjury when he testified that he had never served in the armed forces of the United States. Subsequently a further petition was filed under Title 28 U.S.C.A. § 2255, and Rule 33, in which it was claimed that the government had knowingly used perjured testimony of the witness Gardner, and that Gardner had been guilty of perjury: in regard to the date of his birth; as to his employment in 1925–1950; his marital history; and the dates when he gave information to the Federal Bureau of Investigation; as well as that he suppressed the fact that he had deserted from the Army.

After a hearing on these motions, in which seventeen witnesses were heard and many exhibits introduced, and which extended through 350 printed pages, the District Court overruled all motions in a detailed comprehensive opinion that extends through nineteen pages of the record, reported in United States v. West, 170 F.Supp. 200.

In Patrol Valve Co. v. Robertshaw-Fulton Controls Co., 6 Cir., 210 F.2d 146, 147, we said: "It is not the policy or practice of this court, in reviewing cases on appeal where a district court has rendered a comprehensive opinion with which we find ourselves in full agreement, to rewrite such an opinion and, in a sense, to deprive the trial court of the credit of its careful consideration of the issues and arguments, and complete determination of the cause * * *." With the extensive and comprehensive opinion of the District Court in this case, in denying the motion for judgment of acquittal, for new trial, and in arrest of judgment, as well as its similarly comprehensive opinion overruling the motions under Rule 33 and the petitions under Title 28 U.S.C.A. § 2255, we find ourselves in full agreement.

■ The District Court in its opinion carefully reviewed the evidence as to the various appellants, and the issues of law. We are of the view that there was substantial evidence to sustain the verdict of the jury, and that there was no error in the law as applied by the trial court.

■ As to appellants' contentions that the statutes under which they were indicted violated their constitutional rights under the First and Fifth Amendments, it was held in American Communications Ass'n v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925, that Section 159(h) of the Taft-Hartley Act is constitutional, as a reasonable provision to prevent Communist control of, and infiltration into the labor movement as part of a conspiracy to overthrow the government. The sole sanction for the filing of a false affidavit under the Act is the criminal penalty imposed on the union officer who files a false affidavit. Leedom v. International Union of Mine, Mill & Smelter Workers, 352 U.S. 145, 77 S.Ct. 154, 1 L.Ed.2d 201. Convictions for filing false Non-Communist affidavits by union officers have been affirmed in Lohman v. United States, 6 Cir., 266 F.2d 3, and Hupman v. United States, 6 Cir., 219 F.2d 243; and conspiracies to file false reports fall within Title 18 U.S.C.A. §§ 371 and 1001, the statutory provisions under which appellants in the instant case were indicted; Ebeling v. United States, 8 Cir., 248 F.2d 429. There was no infringement of appellants' rights under the First and Fifth Amendments.

With regard to appellant's claim that the trial court improperly excised parts of official reports by government agents relating to witnesses, or the statements of witnesses to such agents, we have examined the reports and excisions to determine the correctness of the rulings of the Court under Title 18 U.S.C.A. § 3500, subsection (c). Defense counsel, after the direct examination of the first government witness, requested production of any statements which the witness had made to the Federal Bureau of Investigation. Thereupon the District Attorney produced for the defense the statement signed by the witness, and produced for *in camera* inspection by the trial judge,

a report made by the agent of the Federal Bureau of Investigation, which the government contended related only in part to the testimony of the witness. The judge examined the report and found that only a part was subject to production and, he then, personally, excised the portion which he deemed not required to be produced. He preserved copies of both documents for this court's inspection, as provided by the statute. Thereafter, whenever the government contended that certain parts of the agent's report, including such matters as administrative markings, did not relate to the testimony of a witness, the trial judge requested the government to produce the original document and a photostatic copy which contained the portion of the report not relating to the testimony of the witness, and, accordingly, subject to excision. The judge would then inspect the documents and compare them to determine the propriety of the excisions. He did not sustain the making of the excisions on the basis of internal security considerations. On the contrary, he held that even though the statements might affect internal security, nevertheless, if they contained matters relevant to the testimony of the witness, they would have to be furnished or the case dismissed. In his opinion denying motion for judgment of acquittal, the trial judge stated: "On the matter of the statements being excised, the government submitted the entire statement to the court. Portions were excised. In every case the court undertook to and did examine the entire statement, including the excised portion, and found the excised portion had no relation to the matter here, and so stated in the record." The procedure followed by the trial court was similar to that approved in United States v. Rosenberg, 3 Cir., 257 F.2d 760, affirmed 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304.

■ We have examined the reports and the portions excised by the trial judge, and find his rulings correct and in accordance with Title 18 U.S.C.A. § 3500, subsection (c). Procedure under this statute does not violate the due process provisions of the Fifth Amendment. Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304; Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287.

In accordance with the foregoing, the judgment of the District Court is affirmed.