**Charles M. BROECKEL, Petitioner,**

v.

**LaMoyne GREEN, Superintendent, Marion Correctional Institution, Respondent.**

**No. C 67–149.**

United States District Court
N. D. Ohio, W. D.
Dec. 4, 1967.

James R. Willis, Cleveland, Ohio, for petitioner.

Leo J. Conway, Asst. Atty. Gen., State of Ohio, Columbus, Ohio, for respondent.

DON J. YOUNG, District Judge.

This is a petition for a writ of habeas corpus to secure the petitioner's release from the Marion Correctional Institution, Marion, Ohio.

On April 12, 1966, petitioner was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio, to serve a term of one to twenty years, after being found guilty by a jury of the crimes of burglary, grand larceny, forcing entry to a safe, and possession of burglary tools. Petitioner appealed his conviction to the Eighth District Court of Appeals, and that court affirmed the judgment of conviction on December 22, 1966. State v. Broeckel, 8 Ohio App.2d 330, 222 N. E.2d 443 (1966). In January of 1967, petitioner filed a notice of appeal to the Supreme Court of Ohio, and on February 1, 1967, that court dismissed the appeal for the reason that no substantial constitutional question was presented. Petitioner having thoroughly exhausted his state remedies, the petition for a writ of habeas corpus properly lies in this Court. The writ will be denied.

Petitioner's first major contention in support of the writ is that defense counsel was wrongly denied the right to question prospective jurors, on *voir dire* examination, as to any prejudice they might feel towards an accused who did not testify in his own behalf, and the right to inform the prospective jurors that the judge would instruct them to not consider the failure of the defendant to take the stand. In Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court held that the Fifth Amendment in its direct application to the Federal Government, and in its bearing upon the states by reason of the Fourteenth Amendment, forbids comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. But with regard to petitioner's claimed right here, the Court said in a footnote at page 615 of the decision, at page 1233 of 85 S.Ct.: "We reserve decision on whether an accused can require, as in Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L. Ed. 257, that the jury, be instructed that his silence must be disregarded."

■ Thus, it appears that there is no Supreme Court holding which even gives a defendant in a state court the right to a charge by the court that his silence must not be considered, and the right for counsel to do so during *voir dire* is yet a further step from the holdings of the Supreme Court. However, although the court was not constitutionally required to so instruct the jury, the trial judge included the following language in his charge:

> "The failure of any defendant to take the witness stand and testify in his own behalf does not create any presumption against him and the jury is charged that you must not permit that fact to weigh in the slightest degree against such defendant, nor should this fact enter the discussion or deliberations of the jury in any manner." (Record, Vol. 3, at 1559.)

This charge is identical to that requested by the defendant in the *Bruno* case, supra, and approximates the charge which an accused in a federal trial court has a right to upon request. His counterpart in the state courts has no such guarantee, however, since the *Bruno* court based the right upon what is now 18 U.S.C. § 3481, and not upon the United States Constitution. So with regard to the jury charge, it appears that the trial judge in the Court of Common Pleas afforded petitioner federal rights, to which he is not at this time entitled in a state court. Since petitioner has not cited any authority for this alleged right, the trial court must be held to have exercised proper discretion in limiting the scope of inquiry during *voir dire*, that limitation not resulting in the infringement or denial of any constitutional rights possessed by the petitioner.

■■ Petitioner also contends that a pamphlet was distributed to prospective jurors, such pamphlet containing the sentence "The failure of the defendant to testify may be considered by the court and jury and may be made the subject of comment by counsel.", therefore violating the defendant's privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. Although this contention is made by petitioner, the record fails to substantiate any claim that prospective jurors received this pamphlet, nor that they *read* any such statements even if they did receive it. No hearing under the criteria set forth in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), is required to determine whether or not the jurors read the statement in question, for the trial court's charge to the jury was completely correct in this regard, and served to cure any misstatements of the law found in the pamphlets allegedly given the jurors.

Petitioner also contends that evidence gained as a result of the use of electronic monitoring equipment was improperly admitted. Petitioner testified as a proffer that his home had been "bugged", and that the Cleveland Police Department had removed these listening devices upon his demand. (Record, Vol. 2, at 884. It is submitted that through the use of these hidden microphones, the police listened to calls made by petitioner which revealed an intended trip to Canton, Ohio, and that they relayed such information on to an Akron, Ohio, police officer who notified the Canton Police of petitioner's expected arrival. It is argued that therefore the probable cause for the arrest and search of petitioner's car in Canton had its genesis in an improper invasion of privacy, rendering the use of the evidence seized in Canton at the trial in Cleveland unconstitutional, especially when the Municipal Court in Canton had ordered the evidence suppressed during a preliminary hearing in that city on a charge of possession of burglary tools.

■■ Although it is clear that any use of monitoring equipment in petitioner's residence took place after the acts for which he was tried and convicted were committed, that the common pleas judge in Cleveland was not bound by the findings of the municipal court judge in

Canton, and that the Canton evidence was only admitted to show similar acts under the Ohio Revised Code § 2945.59, petitioner's chain of reasoning is weak in a more fatal aspect. Although petitioner's proffer would have shown that the Cleveland Police "bugged" his apartment, it was *not* proffered that petitioner could prove the Canton arrest followed from eavesdropping by the police on his phone calls regarding the trip to Canton. Indeed, it is not wholly beyond the realm of possibility that such information could have been rendered to the police by Charles Immarino, whom petitioner called about the trip, (Record, Vol. 2, at 877) but in any case, there was no proffer that the petitioner's witnesses would testify that the Canton arrest flowed from the "bugging." In addition, it isn't clear from the proffer that there was such an unauthorized physical penetration by the eavesdropping device as would satisfy the Supreme Court's reading of the Fourth Amendment in Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L. Ed.2d 734 (1961), cited by the petitioner as controlling here. In conclusion, petitioner's argument with respect to police eavesdropping and the unconstitutional use of its fruits does not revolve around facts which would place the allegedly improper police activity close enough in time, place and causation to his conviction, to justify this Court in finding a deprivation of constitutional rights.

The remaining contentions of the petitioner can best be summarized as a claim that the trial consisted of numerous procedural errors of a prejudicial nature, and the net effect of their consolidation was to deny the defendant Broeckel the fair trial and due process of law which the United States Constitution guarantees him. Before this broad argument is dealt with, certain specific contentions of petitioner within it deserve mention.

First, petitioner claims that he was denied a fair trial because the prosecution introduced into evidence police "mug shots," when it was clear that the defendant was not going to take the stand and put his character in issue. To support this contention, petitioner cites to this Court a number of federal decisions from the Courts of Appeal and the Supreme Court, most of which do state that it is reversible error for the trial court to allow testimony through pictures or otherwise which shows the defendant's past criminal record, when the defendant has not taken the stand or put his character in issue. It is a correct proposition to contend that these cases set forth the law on the subject in the federal courts, but petitioner's argument overlooks an important procedural distinction. Without exception, all of these appellate federal decisions involve the exercise of the courts' supervisory powers over the district courts, and a review of procedural errors below was proper, even as to the evidentiary standards utilized. In the instant case, however, the prejudicial admission complained of was in a state trial court, and a review of procedural errors was properly had in the state appellate courts.

The various states have evolved exceptions to the rule of evidence petitioner contends is the law, and one of the more common ones is that past crimes and police photographs may be shown to prove the *identity* of the accused. In petitioner's trial, the photographs of Broeckel were shown a witness who had identified the petitioner on the basis of the shots before the trial, and he had even initialed the pictures at that earlier time. The argument, then, is that since the witness knew the petitioner personally, the introduction of police photos which were referred to as "mug shots" was cumulative evidence only, and prejudicial to the rights of the accused. It may have been prejudicial, but that does not mean that the constitutional rights of the petitioner at issue in this habeas corpus proceeding have been violated.

■ Of course, it would be proper for a federal district court in a petition for a writ of habeas corpus to find that the due process guaranteed to defendants in

state courts was undermined by a state evidentiary procedure, if that procedure had been pronounced unconstitutional by the United States Supreme Court, but that does not appear to be the case here. In the recent Supreme Court case of Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), petitioners were convicted felons in a Texas state court, and claimed that the state's recidivist statutes which allowed the admission of proof before the jury for sentencing purposes regarding a defendant's past convictions violated the Due Process Clause of the Fourteenth Amendment. The Supreme Court rejected this argument, holding that the use of prior convictions in state courts for the purpose of exposing habitual offenders, and thus enlarging their sentence if found guilty, was not unconstitutional. Justice Harlan, in writing the majority opinion, pointed out that the case before him didn't arise under the supervisory power of the Court over lower federal court proceedings, but "in the form of a constitutional claim that would require us to fashion rules of procedure and evidence in state courts." (Page 563, 87 S. Ct. page 653). In support of the court's decision not to strike down the Texas evidentiary statute, the Court also stated at page 562, 87 S.Ct. at page 653:

"To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence."

And at page 568, 87 S.Ct. at page 656, the Court continued:

"It would be a wholly unjustifiable encroachment by this Court upon the constitutional power of States to promulgate their own rules of evidence to try their own state-created crimes in their own state courts, so long as their rules are not prohibited by any provision of the United States Constitution, which these rules are not."

In the instant case, the limited use assigned by the state to justify the admission of the photographs is similarly not prohibited by any provision of the United States Constitution or decision of the Supreme Court, nor was the use of police photographs any more prejudicial than the state practice examined by the Court in *Spencer*. And any prejudiciality flowing from the prosecutor's reference to the photos as "mug shots" is presumed to have been cured by the court's instruction to the jury to disregard that description. (Record, Vol. 1, at 500.) This claim of petitioner's does not entitle him to be released or to have a new trial.

■ The other major contention within petitioner's broad attack upon alleged procedural irregularities at the trial is that he had a constitutional right to inspect prior written statements of the prosecution's chief witness. The right in the federal trial courts to examine, before cross examination, all written statements of the witness in the hands of the prosecutor, is now based upon the law popularly referred to as the Jencks Act, 18 U.S.C. § 3500, and that Act was passed as a result of the Supreme Court decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). This right of a defendant in a United States District Court was extended to grand jury proceedings in Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). In both of these cases, however, the Court based its decision upon its supervisory powers over the federal district courts, and not upon a constitutional right of the accused, and it is obvious that petitioner here cannot invoke the Jencks Act itself in the state courts of Ohio. The courts of Ohio have instead taken the position that statements of witnesses given to the prosecutor are immune from inspection by the defense, and State v. Sharp, 162 Ohio St. 173, 122 N.E.2d 684 (1954), cited by respon-

dent as authority for this position still appears to be the law in Ohio. This Court has been cited to no federal decision, nor has it been able to find any, which would make the reasoning of the *Jencks* and *Dennis* cases mandatory upon the State of Ohio, and in addition, the record shows that the cross examination of the prosecution's chief witness, Vulku, by petitioner's counsel was quite extensive. Petitioner has shown no deprivation of constitutional rights here either.

■ With regard to petitioner's allegations that the total effect of the trial was a denial of due process to him, this Court cannot accept such a "catch-all" type of argument. The contention seems to be that the above contentions, when augmented by other claims, such as an abusive and inflammatory closing argument by the state, and a rebuking of defense counsel by the trial judge, in total reduce the level of fairness and due process of law below that required by the Fourteenth Amendment. The record in this case reflects a long and hard fought criminal trial of the type which inevitably generates a certain amount of procedural errors, but this isn't equal to a constitutional deprivation of a fair trial. This Court must keep in mind its function in habeas corpus proceedings. It does not sit as a third appellate tribunal to review the trials of the Courts of Common Pleas. A decision of this Circuit stated the limitations inherent in habeas corpus petitions to the district courts as well as they can perhaps be concisely illuminated.

> "There seems to be a great misapprehension among prisoners in State penal institutions that a writ of habeas corpus in Federal Courts gives them an opportunity to have a general review of their original trials. This writ, powerful and important as it is, has its limitations. It is available to correct the denial of fundamental constitutional rights, but it may not be used to correct mere irregularities or errors of law. In other words, it may

not be used as a substitute for error proceedings." Wooten v. Bomar, 267 F.2d 900, 901 (6 Cir.1959).

In conclusion, petitioner is not being confined in violation of his constitutional rights, and therefore the writ must be denied. An order will be entered accordingly.