**UNITED STATES of America, Plaintiff,**

**v.**

**Leo MOCERI et al., Defendants.**

**No. CR 72–809.**

United States District Court, N. D. Ohio, E. D.

May 9, 1973.

David Margolis, U. S. Dept. of Justice, Cleveland, Ohio, for plaintiff.

Robert Rotatori, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

An order has been issued in this case requiring the United States to show cause why it should not make specific items of information available to the defendants. As set out in the Appendix to this Opinion, the Order incorporates the provisions of Local Criminal Rule 15, which was enacted by the Court on January 15, 1973, and repealed on March 7, 1973.

Prior to the repeal of Local Rule 15, the Government had filed a petition in the United States Court of Appeals for the Sixth Circuit. In that action the Government sought a writ of mandamus or prohibition to preclude enforcement of the rule. This action was then rendered moot by the repeal of the rule.

The order to show cause under consideration presents an actual case and controversy whereby the Government may test the validity of certain discovery requirements. Nevertheless, the Government renewed its petition in the Court of Appeals upon entry of the order. This latter petition was denied on April 13, 1973. The Court held that the appeal was premature, and that it would not consider the matter until an actual case was before it. The order included in this Opinion provides such a case.

The Government has consented to turn over, or has already turned over, recorded statements of the defendants, as well as the items contained in paragraphs 4, 5 and 9 of the order to show cause. In addition, the Government has represented, to the best of its knowledge, that no grand jury testimony was given by the defendants, and that none of the information described in paragraphs 7 and 8 exists. The case is, therefore, moot as to the items described in those paragraphs of the order.

The remaining controversy centers around the pretrial discovery of the names and addresses of prospective Government witnesses, prior criminal records of prospective Government witnesses, and materials covered by the Jencks Act, 18 U.S.C. § 3500.

At the outset, it is important to examine the motivation behind this Court's effort to expand and expedite pretrial criminal discovery. In August of 1971, the Conference of Metropolitan Chief District Judges of the Federal Judicial Center was convened to examine and propose solutions for the elimination of avoidable delay in criminal cases. The Chief Justice attended, addressed the judges and encouraged the project. The report of this Conference was filed by Judge William J. Campbell of the Northern District of Illinois. Judge Campbell proposed numerous suggestions for the elimination of avoidable delay in criminal cases, including the expansion of criminal discovery.

One section of the report reads as follows:

"The time has come to repudiate the archaic bromides which we judges have too long used to rationalize the denial of reasonable defense discovery motions. My own experience has established that liberal discovery will produce additional stipulations which in turn will avoid many trial hours, reduce the number of trial issues, avoid trial surprise and its consequential time consumption, and most probably result in increased, and obviously more intelligent, guilty pleas. In my considered judgment the arguments opposing discovery still advanced by many prosecutors have all been effectively refuted.

"Furthermore, as I am in favor of increased discovery to defendants I am likewise in favor of the expansion of prosecutorial discovery provisions, subject only to Fifth Amendment proscriptions against self-incrimination.

"I do caution, however, that the expansion of criminal discovery should

not be accompanied by additional motions and briefs from defense attorneys. Rather, what is needed is to provide by rule self executing discovery provisions. In my district this was done in 1969 by adoption of our Criminal Rule 2.04 and has been most successful. Such rules automatically require the disgorging of enumerated types of material and information and would relieve defense counsel from filing motions solely to protect the record. And finally such provisions would relieve the court from the necessity of considering extensive discovery motions in every criminal case."

Campbell, Report to the Members of the Conference of Metropolitan Chief District Judges of the Federal Judicial Center, reprinted in Hearings on the Reform of Criminal Laws before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 92nd Cong., 2d Sess.App. (Courts and Corrections) pt. 4, at 3828–29 (1972).

Additionally, pursuant to Rule 50(b), Federal Rules of Criminal Procedure, the judges of this Court have adopted a plan for achieving prompt disposition of criminal cases. The plan authorizes judges to arraign a defendant within fifteen days if he is in custody or within thirty days if not in custody. The trial should commence within ninety days after arraignment if the defendant is in custody or within one hundred and eighty days if he is not in custody. This plan reduces avoidable delays, especially during the pretrial phase of a criminal case and expedites a defendant's plea if one is to be forthcoming. Underlying this entire problem is the reality that most criminal cases are disposed of by way of plea, and that an expeditious procedure will allow the Court to spend more time on other matters, including those criminal cases which eventually go to trial.

I. *Names and Addresses of Prospective Witnesses.*

In light of the above-mentioned policies, the Government's objection to the production of the names and addresses of prospective witnesses cannot be sustained. Essentially, the Government contends that the Court may not order such production because the discovery is not yet *required* by the Federal Rules of Criminal Procedure or by Act of Congress. This argument lacks substance, since there would be no need for an additional order if the discovery were already required. It should be noted that the Government does not even suggest that the production of witness lists is barred by either statute or rule. The mere fact that Congress has provided for such discovery in one area (see 18 U.S.C. § 3432) and not in another cannot be construed as a statutory prohibition.

The Government's reliance on United States v. Conder, 423 F.2d 904 (6th Cir. 1970) is likewise misplaced. In that case, the defendants claimed a right to lists of prospective Government witnesses pursuant to Fed.R.Crim.P. 16(b), and, further, that the District Court erred in failing to provide them. The Court of Appeals held that such discovery was not within the scope of the existing rule. By defining the minimal requirements of Rule 16, however, the Court was not circumscribing the outer limits of pretrial discovery in criminal cases. There was no suggestion whatsoever in the *Conder* case that Rule 16 should be read as a mandate precluding the production of witness lists or other materials not required by its terms. Furthermore, no case has been cited by the Government in which an order requiring the production of witness lists has been held to be erroneous.

In the absence of an express prohibition, this Court may, in the proper exercise of its discretion, order the Government to produce the requested

information.[1]  Of course, it would be an abuse of discretion to order discovery of witness lists if coercion or other harm would likely result to the prospective witnesses.  However, this is not the case here, since it was made quite clear to the Government at the hearing on this matter that it need only make a good faith representation that such harm may result and the discovery would be appropriately restricted.  The Government has not made such a representation; and, accordingly, there would appear to be no sufficient reason why the Government should not be ordered to produce the names and addresses of witnesses whom it intends to call at trial.  The recorded statements of such witnesses, however, are encompassed by the terms of the Jencks Act and will be treated later in this opinion.

## II. *Prior Criminal Records of Prospective Witnesses.*

■ The Government has put forth similar objections to the production of prior criminal records of prospective witnesses.  Here, again, it should be noted simply that United States v. Conder, *supra,* does not prohibit such discovery, but merely defines the minimum requirements of Fed.R.Crim.P. 16. Some additional considerations, however, do merit a more extensive analysis.

The Government first asserts that it would be unduly burdensome and time consuming to make a complete search of FBI files of every prospective witness. Such a search would often necessitate fingerprint examinations, since many of the FBI records bear the same name. This procedure would be contrary to the policy outlined above of expediting criminal cases, and thus would not be required by the Court.  The argument would not apply, however, to known criminal records of intended witnesses which have come to the attention of the prosecution in the ordinary course of preparation for trial.  Such a limited approach, it would seem, is entirely appropriate.

The Government next asserts that pretrial disclosure of criminal records will infringe upon the witnesses' right to privacy.  The force of this argument is minimized, however, if defense counsel is ordered not to divulge the information, except for impeachment purposes at trial.  It is also doubtful that the procedure will impede prospective witnesses from coming forward, since under current practice they are subject to call and impeachment in the same way.

Thus, no substantial reason appears for not compelling the Government to produce, prior to trial, the criminal records of prospective witnesses when such records have come to the attention of the prosecution in the ordinary course of preparation for trial.  The order accompanying this opinion will, therefore, include such a requirement, subject to the limitation that defense counsel not divulge the information except at trial for purposes of impeachment.

## III. *The Jencks Act.*

■ The final contested items of discovery include the prior statements of co-defendants or co-conspirators in the possession of the Government and grand jury minutes relating to such statements, as well as all prior statements of prospective Government witnesses.  This information is clearly within the scope of the Jencks Act, 18 U.S.C. § 3500,[2] and

---

1. *See* Fed.R.Crim.P. 57(b), where it is stated that: "(b) If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

2. Subpart (e) of that statute, as amended by Pub.L. 91–452, Oct. 15, 1970, provides in pertinent part:

"(e) The term 'statement' . . . in relation to any witness called by the United States, means—
(1) a written statement made by said witness and signed or otherwise approved by him;
(2) a stenographic . . . or other recording, or a transcription thereof, which is a substantially verbation recital . . . and recorded contempo-

the defendants' request for discovery must be considered in light of the terms of that statute. As noted above, Fed.R. Crim.P. 57(b) limits the authority of the Court to act when a statute or other federal rule of procedure is applicable. The defendants have argued that Jencks merely defines the *latest* moment at which the covered statements become discoverable. This argument cannot be sustained in view of the clear language and legislative history of the statute.[3] There is left for consideration only the defendants' contention that the Act violates their right to the effective assistance of counsel under the Sixth Amendment of the Constitution.[4]

In considering this constitutional issue, the precise limits of the Supreme Court's decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103 (1957) must be determined. There is no doubt that the Court, in *Jencks,* decided to expand the scope of criminal discovery. However, it is abundantly clear from *Jencks* and its progeny that the rule announced was not of constitutional origin.

Mr. Justice Brennan, writing for the Court, defined the basis of the decision by stating that a contrary rule would be ". . . incompatible with our standards for the administration of criminal justice in the federal courts." 353 U.S. at 668, 77 S.Ct. at 1013. Mr. Justice

Clark argued in dissent that Congress should abrogate the rule there announced. *Id.* at 681, 77 S.Ct. 1007. This would be meaningless without assuming a non-constitutional basis for the rule.

Any doubts as to the source of the Supreme Court's authority to fashion such a rule were laid to rest in Palermo v. United States, 360 U.S. 343, at page 345, 79 S.Ct. 1217, at page 1221, 3 L.Ed.2d 1287, where the Court stated:

"Exercising our power, in the absence of statutory provision, to prescribe procedures for the administration of justice in the federal courts, this Court, on June 3, 1957, in Jencks v. United States, 353 U.S. 657 [77 S.Ct. 1007, 1 L.Ed.2d 1103], decided . . ."

Likewise, in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L. Ed.2d 537 (1967), the Supreme Court stated:

"But questions of that character do not rise to a constitutional level. Indeed our *Jencks* decision and the Jencks Act were not cast in constitutional terms. Palermo v. United States, *supra* [360 U.S.], at 345, 362 [79 S.Ct., at 1229]." 393 U.S. at 356, 89 S.Ct. at 533.

See also Scales v. United States, 260 F. 2d 21, 44 (4th Cir. 1958), aff'd, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); United States v. Hoffa, 307 F.

raneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

3. 18 U.S.C. § 3500(a) provides:

"In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

For a thorough discussion of the purpose and legislative history of the statute, see

Palermo v. United States, 360 U.S. 343, 345–348, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

4. At the outset, it is noted that to sustain this contention, the defense must show that a denial of the discovery will of necessity render the trial "a sham, farce, or mockery," Caldwell v. United States, 435 F.2d 1079, 1082 (10th Cir. 1970), and will be "shocking to the conscience of the Court." Musgrove v. Eyman, 435 F. 2d 1235 (9th Cir. 1971). This standard must be met, since not every incidental limitation on the right to confrontation may be raised to a constitutional level. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

Supp. 1129, 1140 (E.D.Tenn.1970), aff'd, 437 F.2d 11 (6th Cir. 1970), cert. den., 402 U.S. 988, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1970).

Although the Supreme Court has consistently held *Jencks*-type discovery to be of non-constitutional origin, one court attempted to reach a contrary conclusion. In Augenblick v. United States, 377 F.2d 586, 180 Ct.Cl. 131 (1967), the Court of Claims was presented with a demand for back pay by a former serviceman. He claimed that his court martial was without due process, since he had been completely denied Jencks Act information. The Government contended that since it had made a good faith effort to locate the information, the court martial's findings could not be upset. The Court ruled for petitioner, holding that he was illegally discharged and thus was entitled to back pay. In so ruling, the Court raised the Jencks Act violation to a constitutional plateau and stated:

"Plainly, the effectiveness of the trial cross-examination was curtailed by the defense's inability to gain access to the witness' prior statements. . . . In the absence of satisfactory alternative means of discovery, the legal errors committed by the law officer and the Board of Review deprived the accused of rights which were extremely valuable to him—of cardinal moment in this case. He was denied a necessary step toward obtaining, or discovering the status of, materials of first rank for his defense. In our view, this denial, in the circumstances, seriously impeded his right to a fair trial in violation of the Due Process Clause of the Constitution." 377 F.2d at 606–607.

The Supreme Court reversed. United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1967). Noting the above-quoted language, Mr. Justice Douglas, writing for a unanimous Court, found error in that—

"The Court of Claims, in a conscientious effort to undo an injustice, elevated to a constitutional level what it deemed to be an infraction of the Jencks Act. . . ." 393 U.S. at 356, 89 S.Ct. at 533.

He then went on to state:

"But apart from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten, as in Moore v. Dempsey, *supra* [261 U.S. 86, 43 S.Ct. 265, 67 L. Ed. 543], that the proceeding is more a spectacle (Rideau v. Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663) or trial by ordeal (Brown v. Mississippi, 297 U.S. 278, 285, 56 S.Ct. 461, 464, 80 L.Ed. 682) than a disciplined contest." *Id.*

Since *Jencks* was not a constitutional ruling, it was within the power of Congress to modify the holding. The Jencks Act was the result of such congressional action. In *Palermo, supra,* the Supreme Court held that the Act was a valid exercise of the rule-making authority of Congress, even though it limited the scope of the *Jencks* decision. See also United States v. Simmons, 281 F.2d 354, 359 (2d Cir. 1960). In *Palermo,* however, the Court did not address itself specifically to the Due Process or effective assistance of counsel arguments.

The Ninth Circuit has considered and rejected Due Process and Sixth Amendment arguments against the Jencks Act. United States v. Washabaugh, 442 F.2d 1127, 1129 (9th Cir. 1971). The Due Process argument was likewise rejected by the Sixth Circuit. West v. United States, 274 F.2d 885, 890 (6th Cir. 1960), cert. den., 365 U.S. 819, 81 S.Ct. 701, 5 L.Ed.2d 697 (1961). This does not mean, however, that denying defense counsel access to prior statements of government witnesses may never raise constitutional questions. The contrary was suggested by Mr. Justice Brennan in *Palermo, supra,* and Mr. Justice Douglas in *Augenblick, supra.* It could, therefore, be argued in some cases that a *complete* denial of prior statements of

witnesses rendered the trial ". . . more a spectacle than a disciplined contest." *Augenblick, supra,* 393 U.S. at 356, 89 S.Ct. at 534.

For example, such conclusion could be reached if actual inconsistencies were found to exist between prior statements of Government witnesses and testimony adduced at trial, and these discrepancies were withheld from the defense. *Cf.* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In such a situation, after the witness has testified, the defendant may have a constitutional right to the prior inconsistent statements under *Brady* as well as a clear statutory right to them under the Jencks Act.

■ It is important to note, however, that here we are not even dealing with an absolute denial of statements to be used on cross-examination. Rather, the question presented is whether such statements must be made available *prior* to trial. Such a distinction is essential to a proper analysis of the constitutional issues presented. As was stated in United States v. Brown, 425 F.2d 1172, 1174 (9th Cir. 1970):

"Denial of *pretrial* discovery of Jencks Act statements of prospective government witnesses did not offend the Constitution." (Emphasis in original.)

*Accord,* United States v. Wolfson, 289 F.Supp. 903 (S.D.N.Y.1968), aff'd, 405 F.2d 779 (2d Cir. 1968).

Likewise, with reference to a request for *Brady* materials, the Court in *Wolfson, supra,* stated at pp. 914–915 that:

"The essence of the rule is that it is a violation of due process for the prosecution to withhold evidence favorable to the accused which is material either to his guilt or punishment. But in United States v. Manhattan Brush Co., 38 F.R.D. 4 (S.D.N.Y.1965), this Court decided that principles of fairness in the conduct of criminal prosecutions in the context of the Brady v. State of Maryland decision did not place the prosecutor under an obligation to make pretrial disclosures. 'This is not to say that prosecutions are free to proceed without trammel in advance of trial, but that the measure of fairness cannot appropriately be taken short of trial.' *Id.,* at p. 6.'' (Footnote omitted.)

It would seem then, on the state of the case law, that the total effect of a pretrial denial of discovery is made by hindsight, after the trial has been completed. The Government must then be prepared to bear whatever consequences might follow from a determination by the Court that the denial under the particular facts of the case rises to a constitutional violation.

Therefore the cases which suggest possible constitutional implications in this area do so only in the context of either a complete deprivation of discovery or resulting prejudice in a particular case. Obviously, such situations would present more compelling factual situations in which to enunciate a constitutional principle. In any event, it remains that no court having considered the issues here involved has yet adopted even a limited constitutional right to Jencks Act materials. To adopt a broader rule involving a constitutional right to pretrial discovery of such statements in every case would appear to be unwarranted.

A practical problem would also be created by such a constitutional ruling. Since the Sixth Amendment guarantee of assistance of counsel has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment, consistency would require that the right to pretrial discovery be likewise extended to proceedings in state courts. The failure of a state to provide adequate pretrial discovery would thus entitle a petitioner to federal habeas corpus, a basis not heretofore recognized. See Corbett v. Patterson, 272 F. Supp. 602, 609 (D.Colo.1967). In fact, Judge Young of this district has refused

to recognize such a basis for habeas relief, stating:

"The other major contention within petitioner's broad attack upon alleged procedural irregularities at the trial is that he had a constitutional right to inspect prior written statements of the prosecution's chief witness. The right in the federal trial courts to examine, before cross examination, all written statements of the witness in the hands of the prosecutor, is now based upon the law popularly referred to as the Jencks Act, 18 U.S.C. § 3500, and that Act was passed as a result of the Supreme Court decision in Jencks v. United States, 353 U.S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103 (1957), * * * However, the Court based its decision upon its supervisory powers over the federal courts, and not upon a constitutional right of the accused. . . . This Court has been cited to no federal decision, nor has it been able to find any, which would make the reasoning of [Jencks] mandatory upon the State of Ohio."

Broeckel v. Green, 298 F.Supp. 249, 253–154 (N.D.Ohio 1967). Obviously, the implications surrounding this necessary extension of the rule to state tribunals may not be dismissed lightly.

■ To summarize, the desirability of pretrial discovery in criminal cases must be clearly distinguished from constitutional requirements. Although a contrary result might have been reached at an earlier date, *Jencks* cannot be held invalid on its face in view of the prior decisions noted above. If a *complete* denial of such discovery should ever result in actual prejudice to a defendant's fair trial, constitutional questions might thereby be presented. *Augenblick, supra*, 393 U.S. at 356, 89 S.Ct. 528. Additionally, in extreme cases of unfair surprise, a defendant could claim a constitutional right to *pretrial* discovery. If under all the circumstances it could be shown that a defendant was unable to effectively cross-examine a government witness because of a Jencks Act restriction, the application of the statute to those facts might then be held unconstitutional. *Cf.* United States v. Wolfson, *supra*, 289 F.Supp. at 915. However, regardless of the wisdom of the Act, it is constitutional on its face. Therefore, a refusal to follow its provisions must be grounded on the facts of a particular case as they develop at trial and not on a rule of general applicability.

While sustaining the validity of the Jencks Act on its face, some comment upon the wisdom of the Act does not seem inappropriate. As noted previously in this opinion, disclosure, and not secrecy, is more likely to promote swift and effective justice. The public interest in speedy criminal trials as a deterrent to crime is evident, as can be seen from Senator Ervin's bill (S. 754). The Jencks Act would appear to be contrary to the current objectives of many members of Congress. Hopefully that body will exercise its powers to re-examine the wisdom of the statute.

In addition to the possibility of a change in the statute by the Congress, it is notable that the prosecution would severely hinder its own self-interest by invoking the protection of the Jencks Act in every case. By so doing, it would inevitably force more cases to trial instead of disposing of them by plea. If carried far enough, this policy would produce an enormous backlog in the federal courts. In light of the Speedy Trial provision of the Sixth Amendment, the resulting delays could eventually become sufficiently severe to prevent some prosecutions from ever going forward. Effective law enforcement would obviously be hindered if the Government were to create, through extensive use of the Jencks Act, a situation in which only a small percentage of criminal defendants could ever be brought to justice.

■ The Jencks Act does not prohibit the Government from making disclosures of material within its purview. Rather, it limits the power of the Court to order such disclosures. Pending a review of the statute by Congress,

the prosecution, acting both in fairness and in the interest of the United States, should always give careful consideration to voluntarily providing the defense with the statements of its prospective witnesses prior to trial.

Accordingly, the Government is hereby ordered to produce for the inspection of defense counsel the following:

1. The names and addresses of all persons whom the Government intends to call as witnesses at the hearing or trial; and

2. Known records of prior criminal convictions of prospective witnesses, when such records have come to the attention of the Government in the ordinary course of preparation for trial.

The failure of the Government to comply with this order will result in the exclusion of the testimony of the witness or witnesses to which the information pertains.

Defense counsel shall not reveal any information received pursuant to paragraph 2 above, except at trial for the purpose of impeaching of the witness in question.

It is so ordered.

## APPENDIX

### ORDER TO SHOW CAUSE

The Government is hereby ordered to show cause why an order should not be entered requiring the production of the following:

1. Any written or recorded statements and the substance of any oral statements made by the accused, a co-defendant, or a co-conspirator.

2. Those portions of the Grand Jury minutes containing testimony of the accused, a co-defendant, a co-conspirator and relevant testimony of persons whom the prosecuting attorney intends to call at the hearing or trial.

3. The names and addresses of all persons whom the Government intends to call as witnesses at the hearing or trial, together with their relevant written or recorded statements. Names and addresses of witnesses shall not be subject to disclosure if the prosecuting attorney certifies that to do so may subject the witness or others to physical or substantial economic harm or coercion.

4. Any reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons including accountant's analyses.

5. Any books, papers, documents, photographs or tangible objects, which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belonged to the accused or any business organization with which the accused was associated.

6. Any record of prior criminal convictions of persons whom the Government intends to call as witnesses at the hearing or trial.

7. Whether there has been any electronic surveillance (including wire tapping) of conversations to which the accused was a party and whether or not said surveillance was pursuant to court order.

8. Any material or information within the possession or control of the prosecuting attorney which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor.

9. Whether the Government intends to use as evidence any material obtained as a result of a search and seizure, and statements of the accused.

The Government's brief on this Order must be filed no later than March 16. Defense counsel or amicus curiae will be given until April 6 to file briefs in re-

sponse. An oral hearing will then be held on April 9, 1973, at 9:30 a.m.

It is so ordered.

s/ Frank J. Battisti
Frank J. Battisti
Chief Judge