Kenneth Darrell CARPENTER and Peter
Harris Morris, Defendants-Appellants,.

v.

UNITED STATES of America,
Plaintiff-Appellee.

Nos. 71-1623, 71-1624.

United States Court of Appeals,
Tenth Circuit.

July 13, 1972.

Mark H. Adams, II, Wichita, Kan., for defendant-appellant, Peter Harris Morris.

John J. Immel, Asst. U. S. Atty., Wichita, Kan. (Robert J. Roth, U. S. Atty., Wichita, Kan., on brief), for plaintiff-appellee.

Before PHILLIPS, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Peter Harris Morris and Kenneth Darrell Carpenter were convicted of the offense of robbery of federally insured Farmers & Merchants State Bank, Mound City, Kansas, in violation of 18 U.S.C. §§ 2, 2113(a). They were each sentenced to fifteen years imprisonment.

On July 24, 1970, the bank was robbed of $6,948 by two men. Four bank employees and a customer were instructed by the gunmen to enter the vault area and lie on the floor while the robbers took the money.

Morris was arrested by a highway patrolman on August 2, 1970 near Newton, Kansas, for possessing stolen property and for failing to receive a lawfully assigned title. He was taken into custody. The property on his person disclosed by the customary inventory included $678.-19 in cash and a five dollar bill which was bait money from Farmers & Merchants Bank. Several "stand-up" photographs were later taken at the jail on the authority of an F.B.I. agent. One of these photographs was displayed to witnesses of the bank robbery. Both the bait money and the stand-up photos were suppressed by the trial court. When Morris was released on bond he went to Coffeyville, Kansas to visit Fred Dexter at Wanda Riley's home. He told Dexter and Riley that he had robbed a bank and had been caught.

Carpenter was arrested on September 5, 1970, at his home in Kenton, Ohio, at which time F.B.I. agents searched his house. They found a .32 calibre Colt pistol and $90. Two days later Carpenter's wife found $2,024 in a paper bag

Robert L. Howard, Wichita, Kan., for defendant-appellant, Kenneth Darrell Carpenter.

which she voluntarily delivered to F.B.I. agents.

During the trial Adams, a cashier at Farmers & Merchants Bank, identified Morris and Carpenter as the robbers. He stated that he had seen them in Mound City when one of them changed a $100 bill in the bank *before* the robbery. Leo Laird, an assistant cashier at the bank, made an in-court identification of Carpenter as one of the robbers in the bank. He also testified that he had seen Carpenter change the $100 *before* the robbery.

One other bank employee made an in-court identification of Carpenter. Carpenter was also identified by a local tavern operator. Morris was identified in-court by a local resident, by a local visitor, and by a bank customer as one of the robbers.

Morris and Carpenter jointly contend that the Court erred in: (1) admitting Wanda Riley's testimony; and (2) denying their motions for severance. Morris individually alleges that the trial court erred in admitting the testimony of all of the witnesses. Carpenter contends that the trial court erred in: (1) denying his motion to dismiss; (2) denying his motion to suppress; (3) admitting the testimony of F.B.I. Agent Radford and witness Mason; and (4) denying his motions for discovery.

### I.

Carpenter contends that when Wanda Riley testified that Morris said, "We robbed a bank and I got $3,000 and we got caught," he could not confront or cross-examine Morris since Morris did not take the stand. Morris argues that his constitutional rights were violated by her testimony. The appellants rely on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which held that where a codefendant implicates the defendant and the codefendant does not testify, it is reversible error to admit the confession. Motions to strike Riley's testimony were denied by the Court. The jury, however, was instructed to disregard her testimony in relation to Carpenter.

As to Morris, the testimony was an admission against interest admissible under the hearsay rule. His motion for mistrial was properly denied. In regard to Carpenter, Riley's testimony was harmless error in view of the fact that the evidence against him at the time Riley testified was overwhelming. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Prior to Riley's testimony Carpenter had been identified in-court by three of the four bank employees and by a tavern operator in Mound City; Carpenter owned a car similar to the one used in the robbery; Carpenter was in Ottawa, Kansas, before and after the robbery; and over $2,000 in cash was found in his home. Thus Riley's testimony was simply cumulative in nature. It added nothing to what the jury had already heard. In addition, and we believe importantly, Carpenter's name was never mentioned by Morris in his admission. He was not, accordingly, subjected to a powerfully incriminating extrajudicial statement with which the defendant was confronted in *Bruton*. The Court limited consideration of Morris' admission solely to Morris. Metropolis v. Turner, 437 F.2d 207 (10th Cir. 1971); Simpson v. Wainwright, 439 F.2d 948 (5th Cir. 1971), cert. denied 402 U.S. 1011, 91 S.Ct. 2199, 29 L.Ed.2d 434 (1971); United States v. Clayton, 418 F.2d 1274 (6th Cir. 1969), cert. denied 399 U.S. 931, 90 S.Ct. 2262, 26 L.Ed.2d 800 (1970). The Court did not err.

### II.

Morris and Carpenter allege that their motions for severance should have been granted based upon alleged prejudice caused by Riley's testimony. Fed. R.Crim.P. Rule 14 empowers the court to exercise its sound discretion in the matter of severance. United States v. Rodgers, 419 F.2d 1315 (10th Cir. 1969). The appellants have failed to

convince us that they were prejudiced by their joint trial. United States v. Harris, 441 F.2d 1333 (10th Cir. 1971.) We find no abuse of discretion in the trial court's ruling.

■ Carpenter further contends that by reason of an amendment to Rule 14 the court should have examined Riley's statement *in camera* before she testified. However, the Government did not have a statement from Riley for the Court to inspect because Mrs. Riley did not give the F.B.I. a written statement. The defendants had ample opportunity to interview her before she testified since they knew she would be called to testify.

### III.

Morris contends that the testimony of all witnesses should have been suppressed because it was the product of an initial illegal search and seizure. Morris contends that as a result of illegal state police actions, photos were taken of him while he was in state custody on the authority of the F.B.I. One of the photos was used to identify him in violation of the fruit of the poisonous tree doctrine. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Company, Inc. v. United States, 251 U.S. 385, 40 S. Ct. 182, 64 L.Ed. 319 (1920). He contends that but for the illegal actions of the arresting state officers the photo evidence could not have been obtained.

■■ The test is whether the evidence to which the objection is made was come at by exploitation of that illegality or by means sufficiently independent of the wrongful acts so as to avoid the primary taint. Wong Sun v. United States, *supra;* United States v. Kennedy, 457 F.2d 63 (10th Cir. 1972). Where knowledge is gained from an independent source it may be proved like any other. Wong Sun v. United States, *supra;* United States v. Holsey, 437 F. 2d 250 (10th Cir. 1970). At the time Morris was arrested by the state officers, the F.B.I. was already concentrating on him as a suspect in the robbery case; they had obtained his description from the bank employees; and they knew that one of the robbers was called "Pete". F.B.I. Agent Radford had obtained Morris' photo from his parole officer and had contacted local F.B.I. offices. Morris was being held by local authorities on an independent technical state violation when the F.B.I. agents came to the county jail. The agents there discovered the bait money. Several stand-up photos of Morris were taken only after federal prosecution had been authorized. One of these stand-up photos was then shown to witnesses along with the photo of Morris which had been previously obtained from his parole officer. The bait money and the stand-up photos taken in the jail were suppressed by the trial court on the basis of these facts. Several witnesses made in-court identifications of Morris independent of the stand-up photo they had seen. See United States v. Hoffman, 385 F.2d 501 (7th Cir. 1967), cert. denied 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968); Carson v. United States, 332 F.2d 784 (5th Cir. 1964). Under the facts of this case we hold that the use of the stand-up photo to identify Morris was harmless error. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967).

■ Carpenter contends that his constitutional rights were violated when witnesses saw him prior to the preliminary hearing. He alleges that he was paraded past witnesses unshaven and dressed in prison garb and that this event tainted the witnesses' in-court identification under *Wade* and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). The test is whether the pre-trial identification is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, *supra,* 390 U.S. at 384, 88 S.Ct. at 971. The witnesses had ample time to observe Carpenter prior to the robbery and on the day of the

robbery. Neither of the robbers wore masks. The witnesses described Carpenter accurately to F.B.I. agents before the preliminary hearing. The pre-trial identification complained of could not have been so impermissibly suggestive as to result in mis-identification, especially in light of the independent courtroom identifications. See also United States v. Mason, 440 F.2d 1293 (10th Cir. 1971), cert. denied Edwards v. United States, 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971); Belton v. United States, 429 F.2d 933 (10th Cir. 1970).

Carpenter contends his motion to dismiss should have been granted on the basis of unlawful detention and unreasonable delay in presenting the charge to a grand jury and bringing the case to trial. We have reviewed these contentions and find that they have no merit.

## IV.

Carpenter contends that his motion to suppress the evidence taken from his home should have been granted because his consent was obtained by duress. F. B.I. agents arrested Carpenter at his home in Kenton, Ohio on September 5, 1970. He was advised of his rights, handcuffed and placed in an F.B.I. car. He signed a consent to search form applicable to his home. He was not threatened or coerced by the agents. Mrs. Carpenter also consented to the search which disclosed a .32 calibre Colt pistol and a box containing $90. Two days later Mrs. Carpenter found over $2,000 in a paper sack which she voluntarily gave to the agents. Carpenter alleges that his consent was made under duress out of fear that his wife would be held until a search warrant could be obtained.

■■ The constitutional right to be secure against unreasonable searches and seizures is fundamental. However, the right may be waived if done so freely and voluntarily. The government must prove consent. Wren v. United States, 352 F.2d 617 (10th Cir. 1965), cert. denied 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966); McDonald v. United States, 307 F.2d 272 (10th Cir. 1962). The trial court determined that Carpenter's consent was voluntary. The trial court's ruling was not clearly erroneous.

■ Carpenter asserts that he should have been advised of his right not to consent to the search. One of the forms he was given advised him of his right not to consent. Even so, no specific warning is required. Leeper v. United States, 446 F.2d 281 (10th Cir. 1971); White v. United States, 444 F.2d 724 (10th Cir. 1971).

## V.

■ Carpenter alleges that the trial court erred in denying his motions for discovery, particularly in regard to any statements of Thomas Crow. Crow was initially indicted along with Morris as one of the robbers before Carpenter became a suspect. Several witnesses stated that photos of Crow resembled one of the robbers. The identification or misidentification of Carpenter was an issue during the trial. Carpenter alleges that he was denied due process of law because the Government suppressed its files on Crow which contained evidence favorable to himself. The Government assured the Court and counsel that it had no undisclosed evidence that would tend to exculpate Carpenter. The motion for inspection was properly denied. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Crisona, 416 F.2d 107 (2nd Cir. 1969), cert. denied, De Lyra v. United States, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970). This situation falls within the Jencks Act, 18 U.S. C. § 3500, which states that no statement or report in the possession of the United States shall be the subject of a

subpoena, discovery or inspection, until the witness has testified. Crow did not testify but a valid alibi was established for him. He was subpoenaed but his subpoena was withdrawn by the appellants. The Jencks Act controls.

## VI.

Carpenter asserts that certain testimony of F.B.I. Agent Radford and witness Mason should have been stricken. He contends that the scope of cross-examination went beyond the direct examination of Agent Radford; that the testimony of Mason came as a surprise; and that no independent defense investigation could be conducted. Neither of these contentions has any merit.

The trial court has discretion in determining the limits of cross-examination and his discretion will not be disturbed unless clearly prejudicial. Whitlock v. United States, 429 F.2d 942 (10th Cir. 1970); United States v. Talk, 418 F.2d 53 (10th Cir. 1969). We find no abuse of discretion.

Mason testified that he had an appointment with Crow on the day of the robbery. The Government did not disclose the identity of Mason before trial because they had not intended to call him. In any event, there is no requirement that the government disclose its witnesses in a non-capital case. Nipp v. United States, 422 F.2d 509 (10th Cir. 1969), cert. denied Bishop v. United States, 399 U.S. 913, 90 S.Ct. 2213, 26 L.Ed.2d 569 (1970); United States v. Eagleston, 417 F.2d 11 (10th Cir. 1969). The Government did notify defense counsel of its intention to call Mason when the decision was made. Carpenter's attorney agreed that he should be called.

Affirmed.