**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**Jess David RICHTER et al.,
Defendants-Appellees.**

**No. 73–1395.**

United States Court of Appeals,
Ninth Circuit.

Nov. 2, 1973.

Harry J. McCarthy, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Irwin H. Schwartz, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellant.

M. John Bundy (argued), Thomas S. Wampold (argued), O. J. Humphrey, III, Anthony Savage, Jr., Jeremiah M. Long, Frank J. Conway, Robert L. Butler, Maurice Kadish, R. Terry Husseman, Seattle, Wash., Frank Payne, Federal Way, Wash., Clayton Harrington, Jr., Carnation, Wash., Michael E. Jones, Everett, Wash., for defendants-appellees.

Before CHAMBERS and WALLACE, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, Senior United States District Judge, Eugene, Oregon, sitting by designation.

WALLACE, Circuit Judge:

The United States appeals from the district court's dismissal with prejudice of a two-count indictment. The indictment charged defendants-appellees with conspiratorial and substantive violations of various gambling laws.[1]

On November 2, 1972, defendant Rechichi moved to dismiss the first count of the indictment as duplicitous and also moved for discovery of the names, addresses, and telephone numbers of all witnesses whom the government intended to call at the trial. The other defendants joined in the motions.

The district court denied the motion to dismiss [2] but granted a limited motion to discover the names and addresses of all government witnesses who purchased football cards or made bets with or through the defendants or who would testify concerning the involvement of the defendants in the gambling ring.

Twelve days later, the government filed a notice of non-compliance, indicating that the United States Attorney had been directed by the Department of Justice to decline respectfully to comply with the discovery order. The government felt that there was no statutory or precedential basis for such an order and that appellate review could occur only if the indictment were dismissed for non-compliance. The defendants then moved for dismissal; and on December 8, 1972, the district judge dismissed the indictment with prejudice as to all defendants. We reverse.

The defendants pose a threshold issue, claiming that the government has no right of appeal under these circumstances. They place their primary reliance on United States v. Apex Distributing Co., 270 F.2d 747 (9th Cir. 1959) (en banc) where this court limited the applicability of 18 U.S.C. § 3731 to dismissals "based upon a defect in the indictment or information, or in the institution of the prosecution." 270 F.2d at 755. See also United States v. Ponto, 454 F.2d 657, 659–663 (7th Cir. 1971) (en banc).

■ This reliance ignores the fact that § 3731, upon which we based *Apex*, was amended by the Omnibus Crime Control Act of 1970.[3] The amended section allows a government appeal from an order by a district court dismissing an indictment except when barred by the double jeopardy clause of the Constitution. Section 3731 also now states that its provisions should be liberally construed.[4] We conclude that there exists a clear legislative intent that the government be allowed to appeal a dismissal such as the one involved in this case. There was no acquittal and none

---

1. *See* 18 U.S.C. §§ 371, 1955; ch. 280, §§ 2–4 [1971] Wash.Laws 1st Ex.Sess. 1420–21, (Wash.Rev.Code § 9.47.310(2)–(4)). The indictment alleged the existence of an illegal gambling business involving wagers by means of football parlay cards.

2. Defendants Rechichi, Richter and Usher filed cross-appeals from the order denying their motions to dismiss count 1 of the indictment. On March 15, 1973, this court dismissed the appeals of Rechichi and Richter for lack of an appealable final order. Nos. 73–1273 and 73–1276. By separate order filed this day, defendant Usher's cross-appeal is dismissed for the same reason. No. 73–1528.

3. Act of Jan. 2, 1971, Pub.L.No.91–644, § 14(a), 84 Stat. 1890.

4. The legislative history of the amendment also illustrates the intended liberality. The Act was amended in the "following significant" respect:

    Technical distinctions in pleadings as limitations on appeals by the United States were eliminated and in their place the Government was authorized to appeal *any decision or order terminating a prosecution* except an acquittal.

    Conference Rep.No.91–1768, 91st Cong., 2d Sess., 1970 U.S.Code Cong. & Admin.News, 5848 (emphasis added). In contrast, *Apex* held that only "motions to dismiss . . . which are the substantial equivalent of the former demurrer, motion to quash, or plea in abatement, are appealable by the Government." 270 F.2d at 754.

of the defendants claim that they were once in jeopardy. To this extent, our decision in *Apex* has been legislatively modified.[5]

Possessing a right to appeal, the government contends that the trial court exceeded its statutory authority and abused its discretion in granting this discovery order. The precise question of the ability of a trial judge to order the production of the names and locations of prospective government witnesses requires an evaluation of the present status of discovery in criminal cases.

The government argues that the only basis for this type of discovery is either 18 U.S.C. § 3432 or Fed.R. Crim.P. 16, and that neither is applicable to this case. With the latter, we agree. This is not a capital case and so, by its terms, § 3432 does not apply.[6] Likewise, rule 16, in view of its history, should not be read to include the desired discovery.[7] But our agreement as to the nonapplicability of the section and rule does not end our inquiry. The Federal Rules of Criminal Procedure are intended to constitute a comprehensive procedural code for criminal cases in the federal courts. But even the rules themselves do not purport to set outer limits of the power of the court. On the contrary, Fed.R.Crim.P. 57(b) states:

If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute.

As the rules do not contain provisions pertaining to the divulgence of names of prospective witnesses, ordering their production is not inconsistent with the rules. Similarly, there is no statute on the subject except for § 3432. Therefore, the rules did not necessarily foreclose the district court from making the attacked order.[8] However, the real question is whether there is power, aside from the rules, for the district court to make the order here attacked.

It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. "A federal court has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." United States v. Baird, 414 F.2d 700, 710 (2d Cir. 1969), cert. denied, 396 U. S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497

---

5. Section 14(b) of the Act provided that the amended section should not apply to any case begun before the effective date of the Act. (Jan. 2, 1971). Therefore, *Apex* retains its vitality for some older cases. *See, e. g.,* United States v. Weller, 466 F.2d 1279, 1280 n. 1 (9th Cir. 1972).

6. The government urges the application of the maxim *inclusio unius est exclusio alterius,* arguing that Congress' limitation of § 3432 to capital cases indicates a Congressional intent not to allow similar discovery in non-capital cases. *Compare* United States v. Palmisano, 273 F.Supp. 750, 752 (E.D.Pa.1967) *with* United States v. Margeson, 261 F.Supp. 628, 629 (E.D.Pa.1966). We disagree. We believe the section sets a minimum standard of disclosure in this type of case. It does not, by its terms, limit discovery in other types of cases nor has any legislative intent to do so been called to our attention.

7. *See* 1 C. Wright, Federal Practice and Procedure § 254, at 517 (1969).

8. We note the legislative history would not necessarily support treating rule 57(b) as possessing such extensive power to be the basis of the order involved in this case. Apparently, the intent was to allow the court the option not to apply a state practice and to leave the rules flexible enough so that details could be freely worked out by local rule or usage. Examples noted of the latter tend to show the limited thrust: mode of empanelling a jury, manner and order of interposing juror challenges, foreman selection, sealed verdicts and order of argument. 8a J. Moore, Federal Practice ¶ 57.01 (2d ed. 1972). In spite of this, rule 57(b) has been relied upon, in part, for matters of substance not referred to in the rules, e. g., criminal discovery orders. United States v. Sermon, 228 F.Supp. 972, 983 (W.D.Mo. 1964).

(1970). It would be ill-advised to limit improvidently this inherent power for fear of misuse. The firing point of the legal system is with the trial judge who is best situated to administer the law and protect the rights of all. Such discretion is not limitless, but appellate review provides a proper check. Therefore, we are not disposed to hold that the district court may never order the government to divulge names of prospective witnesses.

However, the history, development and present status of criminal discovery indicate that the discretion we recognize should not be unlimited. There was no federal rule governing the subject until rule 16 was adopted in 1946.[9] The advisory committee which proposed the rule noted that it was doubtful "[w]hether under existing law discovery may be permitted in criminal cases . . . ."[10] Although the first draft of the rule "would have allowed discovery of any document so long as it was material and not privileged,"[11] the rule as finally promulgated gave the defendant a limited right of access to material belonging to him or seized from others. The process of redrafting clearly indicated that the rule conferred only a very narrow right,[12] and courts refused discovery of witnesses under this first version.[13]

In 1966, the old rule was repealed, and a new rule which expanded the scope of discovery replaced it. Two subdivisions of the new rule govern discovery by a defendant. Rule 16(a) states that the court, upon defendant's motion, may order discovery of statements of the defendant, results of tests or examinations, and testimony of the defendant before a grand jury. Rule 16(b) provides for further discovery of certain books and papers by a defendant "upon a showing of materiality to the preparation of his defense and that the request is reasonable."[14] Finally rule 16(e) allows the limitation of the scope of discovery under the preceding subdivisions by protective order issued after a sufficient showing by the government.[15]

With this background, we must determine the allowable scope and manner of discovery when a defendant requests the names of the prosecution's witnesses. Expansion of the limits of discovery has not been rapid despite the many changes in other areas of criminal procedure.[16] In establishing any limitations, we believe that we should look to the present rule 16 for guidance. Although witness discovery is not provided

---

9. However 18 U.S.C. § 3432 is the successor to a statute first adopted in 1790. *See* 1 C. Wright, *supra*, § 254, at 516. Since the statute always has been limited to capital cases, it is not relevant to our discussion of discovery in a non-capital case.

10. Advisory Comm. Note to Rule 16 *in* 3 C. Wright, *supra* at 466.

11. 1 C. Wright, *supra*, § 251, at 491.

12. *See* United States v. Peltz, 18 F.R.D. 394, 397 (S.D.N.Y.1955).

13. *See, e. g.,* Dean v. United States, 265 F.2d 544, 547 (8th Cir. 1959).

14. A comparison of the two subdivisions suggests that 16(a) requires no showing whatsoever.

15. The trend beyond the present rule 16 appears to be toward even greater liberality. Proposed amendments to the rule would fur-

ther expand the scope of discovery. *See* 48 F.R.D. 587 et seq. The amendment was submitted for comments in January, 1970. The ABA Project on Standards for Criminal Justice also has proposed "more permissive discovery practices for criminal cases than is provided by applicable law in any jurisdiction in the United States." Standards Relating to Discovery and Procedure before Trial 1 (Approved Draft 1970). Notably each of these proposals specifically provides for discovery of prosecution witnesses. *See* Proposed rule 16(a)(1)(vi), 48 F.R.D. at 589–590; ABA Standards § 2.1(a)(i), at 13. However, they also allow the government to seek protection if it is so inclined. Proposed rule 16(a)(1)(vi), 48 F.R.D. at 589–590; ABA Standards § 4.4, at 18.

16. Further changes to rule 16 were proposed three years ago, yet have not been enacted.

for by the rule [17] we believe the procedures of rule 16(b) can be applied to the present situation. If a defendant desires discretionary disclosure of the government's witnesses, he should make the showing similar to that required by rule 16(b). If the court wishes to entertain the motion and if the government feels that it has a valid reason for resisting that discovery, it should move for a protective order similar to that provided for under rule 16(e).[18] Following these procedures will insure that there is an adequate basis for requesting such discovery and will afford the government a known method for resisting the request. Furthermore, the procedures will produce a record which will enable and facilitate appellate review when it is claimed that the trial judge abused his considerable discretion.

In this case, the record is insufficient to pass upon Rechichi's claim that discovery was reasonable and was necessary in order to prepare properly for trial. Certainly his mere statement would be inadequate. Further, even if Rechichi did make a showing which would be sufficient under a rule 16(b) type standard, the government should have the opportunity to make a showing similar to that outlined in rule 16(e). As this constitutes our first guidelines in this area of discovery and under the unique circumstances of this case, we hold the dismissal with prejudice was unwarranted.

Reversed and remanded.

17. One commentator believes that witnesses may be within the present rule 16(b). 8 J. Moore, Federal Practice ¶ 16.05 [4], at 16–58&n.56 (2d ed. 1972). He bases his conclusion upon the Advisory Committee's Note to Subdivision (e) which mentions "the safety of witnesses" and "perjury or witness intimidation" as factors to be considered upon application for a protective order.

18. We note that Proposed rule 16(a)(1)(vi) specifically mentions "physical or substantial economic harm or coercion." 48 F.R.D. at 590. However, we do not endorse its proposal that the names and addresses "shall not be subject to disclosure" if the government merely "certifies that to do so may subject the witness" to those dangers. 48 F.R.D. at 589.

We also note that the Advisory Committee's Note to the present Subdivision (e) includes the safety of witnesses and the danger of perjury or witness intimidation as considerations. However our mention of these factors is not meant to create an exclusive list. Rule 16(e) leaves matters thoroughly within the discretion of the trial court.