UNITED STATES, Appellant,

v.

Willie J. HOLMES, Appellee.

No. 8172.

District of Columbia Court of Appeals.

Argued Oct. 22, 1974.

Decided Aug. 14, 1975.

------♦------

Justin D. Simon, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and C. Madison Brewer, Asst. U. S. Attys. were on the brief, for appellant.

Linda Huber, Washington, D. C., for appellee.

Before KELLY, KERN and GALLAGHER, Associate Judges.

KELLY, Associate Judge:

The government appeals here from a pretrial order granting the accused in a first degree murder case discovery of the names and addresses of persons the government intends to call as witnesses at trial.[1] Its position before the trial court, and here, is that a trial judge is without authority to order pretrial disclosure of the identity of any government witness in any criminal case. We disagree and affirm.

Appellee Willie J. Holmes was charged with first degree murder, D.C.Code 1973, § 22–2401, for a death that occurred in this city on the afternoon of March 2, 1973, at the corner of 9th Street and Pennsylvania Avenue, S.E. There were at least three eyewitnesses to the homicide and the government proffered pretrial that it proposed to prove premeditation and deliberation through the testimony of these witnesses that the accused followed the victim down the street, stabbing him repeatedly.

Defense counsel, the second appointed to represent appellee, did not know the identity of these witnesses[2] nor did he have any means of finding them since the crime occurred on the street and the witnesses were passersby. Counsel felt he could not rely on the recollections of the accused, who had been drinking heavily on the day of the killing,[3] and appellee's former attorney allegedly had undertaken no defense investigation during the ten months following the offense. He asserted that he was unable to prepare his case or to advise his client whether to plead guilty to the lesser charge of second degree murder without the opportunity to interview the witnesses. Accordingly, counsel moved under Super. Ct.Cr.R. 16 for the production of "the names and addresses of all persons who have knowledge of this case." The government opposed the motion not only by arguing a lack of authority in the court to order production, but also that the defense had already been given extensive pretrial discovery, including a copy of a supposedly inculpatory statement appellee had given the police.

The court granted the motion to produce insofar as it related to witnesses the government planned to call at the trial, finding in its order of January 10, 1974, that the

---

1. D.C.Code 1973, § 23–104(a)(1). The government deliberately, but respectfully refused to obey the discovery order. After an extended discussion of the proper sanction to be imposed, the court, at the request of the government, suppressed the testimony of the witnesses in question.

2. None of the witnesses had testified at the preliminary hearing.

3. Appellee told one psychiatrist who examined him that on the day in question he shared four half-pints of vodka with another man; then drank three fifths of wine, adding four Darvon capsules to each bottle; then bought a fifth of scotch, to which he added two or three Darvon capsules.

identities of the eyewitnesses to the murder were unknown to the defense and, under the circumstances of the case, "not likely to be discovered even in the course of a diligent, meticulous investigation of the facts"; that psychiatric reports of record supported the conclusion that the defendant was intoxicated at the time of the offense;[4] that without the names of the witnesses defense counsel would be hampered in preparing the case for trial and advising the accused whether to enter a guilty plea; and that the showing of need by the defense substantially outweighed any government interest in nondisclosure. It ordered the government to furnish the names and addresses of its eyewitnesses on the condition that defense counsel not disclose their identities except to a specified co-counsel. It further ordered that the witness interviews be conducted by counsel and his co-counsel in the presence of any person the witnesses wished to accompany them and at times convenient to the witnesses. The trial court's order was not based on Rule 16, which does not provide for the discovery of names of witnesses, but rather on "the inherent power [of the court] to compel the government to disclose the names and addresses of witnesses."[5] When the government chose not to comply with the order, the court suppressed the testimony of its witnesses.[6]

The issues presented for review are whether the trial court was empowered to order the production by the prosecution of the names and addresses of its eyewitnesses to the alleged crime and, if so, whether it was justified in doing so here.

I

Discovery in criminal cases, once quite limited, has become commonly available in the last several decades.[7] Approximately 22 states presently require that the accused be notified prior to trial of the witnesses to be called against him, usually by endorsement on the indictment or in-

4. After a mental examination at St. Elizabeths Hospital appellee had been found competent to stand trial. The private psychiatrist who examined appellee concluded:

Presuming the government's version of the crime to be accurate, and presuming that Mr. Holmes' account of his conduct and mental state in the hours prior to the homicide also to be accurate, I am unable to reach a conclusion with reasonable medical certainty that Mr. Holmes' capacity for voluntary behavior was severely impaired by his intoxication.

The fact of memory loss is, in my opinion, evidence of a bio-chemical alteration in his mental processes. However, memory loss by itself does not compel a conclusion of loss of behavior controls. It is my opinion, therefore, that Mr. Holmes was suffering from Alcoholism, Habitual Excessive Drinking, Acute and Chronic at the time of the alleged offenses. I am unable to determine the degree to which his intoxication was causally related to the homicide.

5. The court was careful to point out in its opinion that the power to require disclosure should be exercised sparingly, and that it would compel disclosure only in serious criminal cases on a strong showing of particularized need which substantially outweighs the government's interest in nondisclosure.

6. In a related area, production of witnesses' statements at trial, the Supreme Court has recently stated that "[d]ecisions of this Court repeatedly have recognized the federal judiciary's inherent power to require the prosecution to produce the previously recorded statements of its witnesses so that the defense may get the full benefit of cross-examination and the truth-finding process may be enhanced. See, e. g., Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 (1953); Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942); Palermo v. United States, 360 U.S. 343, 361, 79 S.Ct. 1217, 1229, 3 L.Ed.2d 1287 (1959) (Brennan, J., concurring)." United States v. Nobles, — U.S. —, —, 95 S.Ct. 2160, 2166, 45 L.Ed.2d 141 (1975) (footnote omitted). The Court there decided that that power could properly be utilized on a request by the prosecution for disclosure and that preclusion of the testimony of a defense witness when defense counsel refused to produce the witness' report was an appropriate sanction for assuring compliance with the trial court's order. Id. at 2171.

7. 1 Wright, Federal Practice and Procedure: Criminal § 251 (1969).

formation.[8] The American Bar Association Advisory Committee on Pretrial Proceedings recommends the following standard for the discovery of witness lists:

2.1 Prosecutor's obligations.

(a) . . . the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control:

(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their relevant written or recorded statements. . . . . [ABA Standards, Discovery and Procedure Before Trial § 2.1 at 52 (Approved Draft, 1970).] [9]

Two strong reasons are given for this recommendation. The first is that it is clearly in the interest of fairness that the defense be able to prepare to cross-examine and test the credibility of the government's witnesses.[10] The second, which the Advisory Committee finds even more compelling, is that a broad discovery policy (including the disclosure of witness lists) is vital to the effective administration of our system of criminal justice.[11] Disclosure assures that issues which affect the validity of the proceedings and which should be disposed of pretrial are brought to the attention of the defense and dealt with in a timely manner. In addition, disclosure of the prosecution's evidence "facilitates the obtaining of guilty pleas" which has "positive values for the criminal process" and is more efficient as well.[12]

At the present time there are no such broad discovery provisions operative in the federal courts, nor in the courts of the District of Columbia.[13] Discovery of witnesses or witness lists may result from a number of rules and case decisions, however. For example, under Fed.R.Crim.P. 7(f) which provides for the filing of a bill of particulars [and also under Super.Ct. Cr.R. 7(f)],

it is not uncommon for the Government to be required to disclose the names of some potential witnesses . . . where this information is necessary or useful in the defendant's preparation for trial. [Citations omitted.] [*Will v. United States,* 389 U.S. 90, 99, 88 S.Ct. 269, 275, 19 L.Ed.2d 305 (1967).]

The alibi rule, Super.Ct.Cr.R. 16–I, and Supreme Court decisions require the prosecutor to notify the defendant of the witnesses by whom it intends to refute an alibi defense. *Smith v. United States,* D.C. App., 325 A.2d 180, 183 (1974). A constitutional requirement that the prosecution disclose exculpatory witnesses and evidence to the accused has been articulated by the Supreme Court and subsequent circuit court cases.[14] Moreover, discovery is of-

8. ABA Standards, Discovery and Procedure Before Trial § 1.2 at 35, § 2.1 at 56–57 (Approved Draft, 1970).

9. In general, the ABA Standards recommend broad discovery in criminal cases "to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process". ABA Standards, Discovery and Procedure Before Trial § 1.2 (Approved Draft, 1970).

10. ABA Standards, Discovery and Procedure Before Trial § 1.2 at 41, § 2.1 at 56 (Approved Draft, 1970).

11. ABA Standards, Discovery and Procedure Before Trial § 1.2 at 41–42 (Approved Draft, 1970), *and see* ABA Standards Relating to the Administration of Criminal Justice, Compilation, at 244–45 (1974).

12. ABA Standards, Discovery and Procedure Before Trial § 1.2 at 42 (Approved Draft, 1970).

13. The proposed amendments to the Fed.R. Crim.P. 16(a)(1)(E), Vol. 416 U.S.-Part 2 at 1005 (1974), provide for the production of the names and addresses of government witnesses upon request.

14. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States ex rel. Meers v. Wilkins,* 326 F.2d 135, 136–38 (2d Cir. 1964).

ten engaged in by the prosecution on an informal basis.[15]

Formerly, discovery was mandatory in capital cases by virtue of 18 U.S.C. § 3432.[16] The decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), held unconstitutional statutes which permit capital punishment imposed at the discretion of the jury as constituting cruel and unusual punishment,[17] however, which in effect neutralizes the statute.[18]

## II

■ In the face of the mandate of 18 U.S.C. § 3432 that witness lists must be divulged in capital cases, a body of federal case law has formulated a rule that absent a constitutional command or a statute (such as 18 U.S.C. § 3432) the government is not required to disclose its witnesses.

[I]n the absence of a statutory or constitutional requirement the government is not required to endorse the names of its witnesses on the information or indictment, nor is there a requirement that the government disclose its witnesses in any other manner, except in the case of a trial for a capital offense. [Citations omitted.] [*United States v. Seasholtz,* 435 F.2d 4, 7 (10th Cir. 1970).][19]

To say that the government is not required to turn over witness lists in non-capital cases does not mean, however, that it cannot be ordered to do so in an appropriate case. The general rule does not afford the government immunity from the court's mandate.

■ The question of the power of a trial court, on a motion by the defense to order production of witness lists, was squarely faced in *United States v. Richter,* 488 F.2d 170 (9th Cir. 1973). The district court had granted a limited motion for discovery of the names and addresses of all government witnesses who had made bets with the defendants or would testify concerning their participation in a gambling ring. The circuit court held that aside from the Fed.R.Crim.P., the district court

15. Remarks of Jon O. Newman, United States Attorney for Connecticut, Discovery in Criminal Cases, 44 F.R.D. 481, 498 (1967).

16. "A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each venireman and witness." 18 U.S.C. § 3432 (1969).

17. *Moore v. Illinois,* 408 U.S. 786, 800, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972) ; *United States v. Lee,* 489 F.2d 1242, 1246–47 (D.C. Cir. 1973).

18. *Cf. United States v. Hoyt,* 451 F.2d 570 (5th Cir. 1971), *cert. denied,* 405 U.S. 995, 92 S.Ct. 1272, 31 L.Ed.2d 465 (1972) ; *Reed v. United States,* 432 F.2d 205 (9th Cir. 1970), *cert. denied,* 401 U.S. 957, 91 S.Ct. 986, 28 L.Ed.2d 242 (1971). [Effect of decision declaring the death penalty provision of federal kidnapping statute unconstitutional.] The effect of *Furman v. Georgia, supra,* has been litigated in the context of pretrial bail and removal cases, resulting in an almost even split of authority on whether certain crimes do or do not remain capital crimes. *Compare Johnson v. State,* 271 Md. 189, 315 A.2d 524 (1974), and the cases cited therein, with *Ex parte Bynum,* 312 So.2d 52 (Ala. Sup.Ct.1975), and the cases cited therein.

19. For other expressions of this rule *see Davis v. United States,* D.C.App., 315 A.2d 157, 161 (1974) ; *Carpenter v. United States,* 463 F.2d 397, 402 (10th Cir.), *cert. denied,* 409 U.S. 985, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972) ; *United States v. Harflinger,* 436 F.2d 928, 936 (8th Cir. 1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971) ["[T]here is no rule or cases holding that the Government in a non-capital case must divulge the names of its witnesses in advance of trial. . . ."] ; *United States v. Persico,* 425 F.2d 1375, 1378 (2d Cir.), *cert. denied,* 400 U.S. 869, 91 S.Ct. 102, 27 L.Ed.2d 108 (1970) ["There is no obligation on the part of the government to inform the defense of its intention to call a witness when the indictment is for a non-capital offense. . . ."].

had the power to enter the challenged order,[20] stating:

> It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. "A federal court has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." [Citations omitted.] [*United States v. Richter, supra,* 488 F.2d at 173.]

This excerpt indicates that the court's holding rests on grounds of fundamental fairness and of administrative efficiency and order, with the latter helping to effectuate the former. In our judgment, the government may be required to allow discovery of its witnesses under the aegis of either principle.[21]

Whether discovery of the names and addresses of witnesses is to be granted requires a consideration of opposing interests. Generally, the major interests represented by the government are the protection of the witnesses and the integrity of their testimony.[22] To paraphrase the Supreme Court, speaking to the analogous situation of disclosure of informants, the problem is one that calls for balancing the public interest in protecting and encouraging witnesses for the government against the individual's need of the witness or witnesses for the preparation of his defense.[23] The Court there held that no fixed rule with respect to disclosure of informants is justifiable and the question whether nondisclosure is error depends on the particular circumstances of each case.[24] This reasoning is equally applicable to the issue of whether a defendant should be granted discovery of a witness list.

20. *See also United States v. Murphy,* 480 F.2d 256, 259 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973) [". . . it is settled that this motion [for disclosure of the government's trial witnesses] was addressed to the discretion of the trial court. . . ."]; *United States v. Cole,* 449 F.2d 194, 198 (8th Cir. 1971), *cert. denied,* 405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806 (1972); *United States v. Hancock,* 441 F.2d 1285, 1286 (5th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 81, 30 L.Ed.2d 63 (1971) ["Apart from the Congressionally created exception in capital cases, the granting of a defense request for a list of adverse witnesses is a matter of judicial discretion, and a denial can be challenged only for abuse. . . ."]; *United States v. Jackson,* 374 F.Supp. 168, 170, 174 (N.D. Ill.1974) (Memorandum Opinion per Marshall, J.), *aff'd on this ground,* 508 F.2d 1001, 1006 (7th Cir. 1975); *United States v. Moceri,* 359 F.Supp. 431, 434–45 (N.D.Ohio 1973); *United States v. Ahmad,* 53 F.R.D. 186, 191 (M.D.Pa.1971); *United States v. Leichtfuss,* 331 F.Supp. 723, 732 (N.D.Ill. 1971); *United States v. Frank,* 23 F.R.D. 145, 146 (D.D.C.1959). Other cases which indicate the court has discretion to order the production of government witness lists are *United States v. Verse,* 490 F.2d 280, 281–82 (7th Cir. 1973), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974); *United States v. Baum,* 482 F.2d 1325, 1331–32 (2d Cir. 1973); and *United States v. Jordan,* 466 F.2d 99, 101 (4th Cir. 1972), *cert. denied,* 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973). *Cf. United States v. Palmisano,* 273 F.Supp. 750, 752 (E.D.Pa. 1967) and *United States v. Bryson,* 16 F.R.D. 431, 436 (N.D.Cal.1954), in which the court ordered production of the government's witness list before the case was transferred from the District of Columbia to the Northern District of California.

21. *See United States v. Jackson, supra* note 20, 374 F.Supp. at 175–77, where discovery was ordered by the judge on his own account, to facilitate a lengthy trial involving a number of defendants, about 100 witnesses, and the same number of forged checks.

22. There is no specific claim by the government in this case of danger to any witness. *Compare Davis v. United States, supra,* where the trial judge refused to order disclosure of the names of government witnesses who "were of tender age" and one of whose parents had specifically objected to an interview by defense counsel. We there concluded the court under the circumstances had not abused its discretion.

23. *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

24. *Ibid.*

We thus agree with the course followed by the *Richter* court: where the defendant in a criminal case requests the production of the government's witness list he must make a clear showing of materiality and reasonableness, as he is required to do in motions under Fed.R.Crim.P. 16(b). Additionally, the government must be given an opportunity to oppose the motion *and to request* a protective order as it could under Rule 16(e).[25] In the instant case defense counsel satisfied the requirement of materiality when he established that he was unable to locate the eyewitnesses to the offense; witnesses who were necessary for the preparation of appellant's defense.[26] Discovery of the three or four eyewitnesses was not so burdensome to the government as to be unreasonable.[27] The government actively opposed the discovery motion and safeguards for the witnesses were provided in the conditions imposed in the court's order.

The remaining inquiry is whether the court abused its discretion by granting, in part, the motion for discovery in this case. After thorough examination of the record, we conclude that the trial court's exercise of its discretion was not unreasonable, arbitrary, or prejudicial to the government, nor was the government's interest in the protection of witnesses such as to outweigh the appellee's interest in obtaining their names.[28] Accordingly, the order on appeal is

*Affirmed.*

GALLAGHER, Associate Judge (concurring):

I concur with the court's opinion in this case with one reservation. I do not think the trial court in a routine case[1] should consider that the law on the production of witness lists is now the same as if it were provided for by court rule. Until such time as there is adopted a Rule on the question I think an exercise of discretion to grant the witness list should be reserved for the unusual case. I say this simply because the fact is we do not now have a Rule authorizing it.

25. Fed.R.Crim.P. 16(e): "Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted or deferred, or make such other order as is appropriate. . . . " Super.Ct.Cr.R. 16(e) is the same.

26. The court found as a fact that "the defense will not challenge the defendant's presence at the scene, but will seek to negate the alleged deliberation and premeditation."

27. Although the defense request was for all persons having knowledge, it was permissible for the trial court to grant a portion of this

request by ording the production of the names of prospective witnesses. *United States v. Ahmad, supra* note 20, 53 F.R.D. at 190–91.

28. The prosecuting attorney stated at various points in the argument on the motion that this was not the average, run-of-the-mill homicide; that it was a bizarre case which probably would not recur, and that an attempt by the defense to locate the witnesses would be like looking for a needle in a haystack.

1. I believe the facts in this case are not at all routine.